## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lisa Rudnicki, being duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the U.S. Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and have been so employed since February, 1996. In that capacity, I investigate violations of the federal firearms statutes and have participated in many investigations relating to the unlawful possession of firearms and ammunition.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(l) makes it a crime for a person to knowingly possess a firearm or ammunition in and affecting interstate commerce after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year. This offense is commonly referred to as felon in possession of a firearm and ammunition.

3. I submit this affidavit in support of an application for a criminal complaint charging ELVIS ABINADER, date of birth XX/XX/1999, with felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

4. This affidavit is based upon information personally known or provided to me by other agents and members of the Boston Police Department, as well as my review of court records and records generated in this investigation. This affidavit does not contain all the facts known to me but rather only those which are sufficient to establish probable cause that ABINADER committed the above-mentioned offense.

**PROBABLE CAUSE**

*June 24, 2019 Arrest & Firearm Recovery*

5.     Shortly after 2:00 pm on Monday, June 24, 2019, members of the Boston Police Department ("BPD") arrested ABINADER at the Mt. Pleasant Play Area in Boston, Massachusetts, for, *inter alia*, unlawful possession of a firearm, in violation of Massachusetts General Laws ("MGL") Chapter 269, Section 10, and unlicensed operation of a motor vehicle (to wit, a moped capable of exceeding 30 miles per hour), in violation of MGL Chapter 90, Section 10.

6.     That afternoon, BPD officer Patrick Curtin and several fellow officers (together, the "Officers") were conducting a directed patrol in the Roxbury area of Boston, specifically in and around Dudley Street, Greenville Street, and Mt. Pleasant Ave. The Officers were conducting the patrol in a black Ford Explorer equipped with antennas and emergency lights. The Explorer was easily identifiable as a police vehicle.

7.     Around 2:00 pm that afternoon, as the Officers drove outbound (east) on Dudley Street through the intersection with Harrison Ave, they observed a light skinned Hispanic male driving a black moped north (inbound) on Harrison. The male was wearing all white with a small bag slung over his shoulder across his chest. He did not have a helmet on, thereby committing a civil traffic infraction. After the Officers exited the intersection, they observed the male stop behind them in the middle of the intersection and peer at the Officers' Ford Explorer. The male then continued north on Harrison in the direction of Melnea Cass Boulevard.

8.     The Officers continued east/southeast on Dudley Street until they reached the entrance to Mt. Pleasant Ave on their right. Mt. Pleasant Ave is a one-way street that proceeds west/northwest and ultimately returns back to Dudley Street. The Officers drove nearly the

entire length of Mt. Pleasant Ave, until reaching the Mt. Pleasant Play Area, also known as Mt. Pleasant Park, adjacent to 35 Mt. Pleasant Ave.  In so doing, the Officers had circled back in the direction of the intersection where they had previously seen the male on the moped.  Taking this route, the distance from the Dudley/Harrison intersection to the Mt. Pleasant Play Area is approximately 0.8 miles and took approximately five minutes to drive.

9. As the Officers approached the Mt. Pleasant Play Area, they observed a moped parked directly in front of the entrance to park, which moped resembled the one they had just seen minutes earlier being driven on Harrison Ave.  The Officers then observed a Hispanic male (later determined to be ABINADER) wearing a white t-shirt, white sweatpants, and carrying a shoulder bag.  The Officers recognized the male as the individual they had just seen driving the moped.  The male (ABINADER) was sitting near the entrance to the park with several other males—including multiple well known members of the Vine/Forest Street gang—and one female.

10. From the Officers' vehicle, Officer Curtin asked the group multiple times to whom the "scooter"—i.e., the moped—belonged.  After receiving no responses initially, one of the males shouted "the guy who was riding it just went into that building," pointing to a residence across Mt. Pleasant Ave.  The Officers then exited their vehicle and began to approach the group.  Officer Curtin inspected the moped, the speedometer on which indicated that it had a top speed of 50 miles per hour.  Officer Curtin knew that, under Massachusetts law, any person operating such a moped must have a valid driver's license and that doing so without a license is a criminal offense.

11. Officer Curtin approached ABINADER—having recognized him as the male who had been driving the moped through the Dudley Street and Harrison Ave intersection—and

3

asked him to produce a driver's license. ABINADER verbally responded that he did not have one.

12. The Officers then asked ABINADOR to stand and, in light of ABINADER's admission, conducted a search incident to arrest for operating a motor vehicle without a license, in violation of MGL Chapter 90, Section 10. At the beginning of the search, both Officer Curtin and another officer initially patted ABINADER's shoulder bag quickly. Observing ABINADER display signs of nervousness during the search, Officer Curtin then returned to the shoulder bag. Upon patting the shoulder bag more slowly, Officer Curtin felt the outline of a small firearm. Officer Curtin alerted his fellow officers to the firearm's presence, and the Officers immediately handcuffed ABINADER. Officer Curtin then opened the shoulder bag and removed a Ruger, model LCP, .380 caliber handgun (hereinafter the "Ruger handgun") loaded with one live cartridge in the chamber and two live cartridges in the magazine. The Ruger handgun's serial number was obliterated.

13. After being arrested and booked, ABINADER executed a written Miranda waiver form and agreed to be interviewed by BPD members. During the interview, ABINADER stated that he had purchased the Ruger handgun the day before for $400. He further stated that he had purchased the moped approximately two or three weeks earlier for $200 and that he understood the moped had been stolen.

*Fingerprint Analysis*

14. On or about June 28, 2019, a member of the BPD Latent Print Unit examined and processed the Ruger handgun for latent fingerprints. Three latent prints were recovered on the magazine, while none were recovered on the handgun itself or the cartridges. On or about July 16, 2019, the same member of the BPD Latent Print Unit completed an examination of the

recovered latent fingerprints using the ACE-V methodology (Analysis, Comparison, Evaluation, and Verification). Two of the latent fingerprints were identified as those of ABINADER using the Massachusetts' AFIS system (Automated Fingerprint Identification System). The third latent fingerprint—which was determined to not be suitable for a search through AFIS—was also identified as that of ABINADER based on a comparison to exemplar fingerprints associated with ABINADER from the Massachusetts State Police database.

*Interstate Nexus*

15. Because the Ruger handgun's serial number was obliterated, ATF has not yet been able to identify the handgun's sale history. Nevertheless, the Ruger handgun bears the imprint "Prescott – AZ" on the barrel. Further, I have consulted with ATF Special Agent Matthew Kelsch, who is trained to perform interstate nexus examinations. Agent Kelsch has physically examined the Ruger handgun and the ammunition found therein and determined that (i) they are a "firearm" and "ammunition," respectively, for purposes of federal law, and (ii) both were manufactured outside of Massachusetts. Because the Ruger handgun and the ammunition found therein were not manufactured in Massachusetts, they necessarily traveled in interstate commerce in order to be recovered in Boston on June 24, 2019.

*Prior Felony Conviction*

16. I have reviewed ABINADER's criminal history maintained by the Massachusetts Department of Criminal Justice Information Services, as well as court records concerning ABINADER. Those records reflect that, on or about June 18, 2018, in case number 1702CR003310 in the Boston Municipal Court, Roxbury Division, ABINADER pled guilty to and was convicted of possession with intent to distribute a class B controlled substance, in violation of MGL Chapter 94C, Section 32A. That offense carries a maximum penalty of up to

10 years imprisonment in state prison or up to 2 and 1/2 years in jail or a house of correction. ABINADER was sentenced to 18 months probation. I understand that, in proceedings before the Boston Municipal Court, Roxbury Division, defendants are provided a copy of the criminal complaint reflecting the charge(s) they are facing, and that such criminal complaints state the maximum penalties associated with the charge(s). I further understand that, at the time of entering a guilty plea, defendants execute a form titled "Tender of Plea or Admission & Waiver of Rights," wherein defendants confirm that they are "aware of the nature and elements of the charge(s) to which [they are] entering [their] guilty plea or admission" and are also aware "of the nature and range of the possible sentence(s)." Accordingly, upon entering his guilty plea to the aforementioned charge, it is inferable that ABINADER knew that the aforementioned conviction was for a crime punishable by a term of imprisonment greater than one year. As such, ABINADER was a prohibited person at the time he possessed the Ruger handgun and the ammunition therein on June 24, 2019.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## CONCLUSION

17. Based on my knowledge, training, and experience, and the facts set forth in this affidavit, I have probable cause to believe that, on or about June 24, 2019, ABINADER knowingly possessed a firearm and ammunition (to wit, the Ruger handgun and the ammunition therein) in and affecting interstate commerce after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, all in violation of 18 U.S.C. § 922(g)(1).

Respectfully submitted,

_____
Lisa Rudnicki
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me
on September 9, 2019

_____
Honorable Jennifer C. Boal
United States Magistrate Judge
District of Massachusetts